**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION**

FILED

OCT 02 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

| | |
|---|---|
| ARTHUR JOYNER, | § |
| **Plaintiff,** | § |
| v. | § |
| | § |
| DEL RIO BORDER CONTROL | § |
| STATION and AGENTS ALEX | § |
| STALLINGS, BRIAN TANKE, and | § |
| ROBERTO ROCHO, | § |
| **Defendants.** | § |

Civil Case No. DR-22-CV-0013-AM

**ORDER**

Pending before the Court is the Report and Recommendation issued on April 10, 2023, by the Honorable Victor Garcia, United States Magistrate Judge. (ECF No. 72.) The Court referred all pretrial matters to Magistrate Judge Garcia under 28 U.S.C. § 636. As part of that referral, Magistrate Judge Garcia now recommends that the Defendants' Rule 12(b)(6) Motion to Dismiss [ECF No. 60] be granted, the Plaintiff's Complaint [ECF No. 1] be dismissed with prejudice, and the Plaintiff's Motion to Set the Record Straight [ECF No. 39] be denied. The Plaintiff filed a timely objection to the Report and Recommendation on April 24, 2023. (ECF No. 73.) Upon a de novo review of the record, the Court **APPROVES and ADOPTS** the findings and conclusions contained in the Report and Recommendation.

**I.     BACKGROUND**

**A.  Factual Background**

Under the motion to dismiss standard and taking all the Plaintiff's well-pleaded allegations contained within his complaint and amendments to the complaint and stated under oath at the *Spears* hearing as true, this lawsuit is based on these facts:

At approximately 4:00 p.m. on February 24, 2022, the Plaintiff, a resident of Arkansas, and his four passengers were stopped by United States Border Patrol outside of Del Rio, Texas traveling towards San Antonio, Texas. (ECF No. 11 at 4-5.) The Plaintiff was in the area to expand his business and had just won a contract to install lighting at a Motel 6 in Del Rio. (*Id.* at 2.) He was driving a crew-cab truck registered to his grandmother with an Arkansas license plate. (*Spears* Hearing, ECF No. 62.) The four passengers in the Plaintiff's vehicle included his friend, Hakeem Williams, who rode in the front passenger seat, and three paint/sheet rock workers who rode in the backseat. (*Id.*) The Plaintiff had completed electrical work in Eagle Pass, Texas and intended to drive towards San Antonio, Texas to look for apartments. (*Id.*) He agreed to give the workers a ride to San Antonio, and because he had worked alongside them the last three days, he believed them to be American citizens. (*Id.*) The Plaintiff did not ask for the workers' documents because he asserts it was not his job or place to do so. (*Id.*)

The agents who initiated the traffic stop told the Plaintiff they were conducting a citizen's check. (*Id.*) During the stop, the agents asked the three workers if they had identification and instructed everyone in the truck to step out. (*Id.*) The Plaintiff asserts the agents had no reason for stopping him and found nothing in his truck to suggest why he was taken to the Border Patrol station. (*Id.*) The agents drove off in the Plaintiff's truck to search for secret compartments, and they confiscated his three cell phones. (ECF No. 1.) The Plaintiff alleges that Agent Tank said after asking a couple of questions, the Plaintiff would be released. (*Id.*)

The Plaintiff was detained at the Del Rio Border Patrol facility until 4:00 p.m. on February 26, 2022 — a total of three days. (ECF No. 11 at 4; *Spears* Hearing, ECF No. 62.) During his detainment, the Plaintiff was not allowed to shower or take care of personal hygiene. (*Spears* Hearing, ECF No. 62; ECF No. 39 at 3.) He slept on a cold, hard floor and was not allowed one

hour outside. (*Spears* Hearing, ECF No. 62.) The Plaintiff was not fed or asked about his allergies. (*Spears* Hearing, ECF No. 62; ECF No. 39 at 3.) He was only given water inside the cell. After he began wheezing, he did not receive medical attention for his asthma. (*Spears* Hearing, ECF No. 62.) The Plaintiff asked agents for a phone call and was denied. (ECF No. 39 at 3). He also was told he could not speak to his family or an attorney. (*Spears* Hearing, ECF No. 62.)

The Plaintiff states that criminal charges against him were not discussed during his detainment, and at the time of the *Spears* hearing, he had yet to receive any documentation or an explanation of why he was pulled over or detained for three days. (*Id.*) The Plaintiff was released with Mr. Williams. He believes the other passengers were released before he and Mr. Williams. Upon his release, the agents called the Plaintiff a cab, which he had to pay for himself. (ECF No. 1.) His truck and cell phones were not returned to him until 100 days later, and he was forced to pay between $5,000 and $6,000 to retrieve his property. (*Spears* Hearing, ECF No. 62.)

**B. Procedural Background**

Plaintiff Arthur Joyner, appearing *pro se*, filed a complaint on March 25, 2022, asserting that the Del Rio Border Control Station and Border Patrol Agents Brian Tanke, Alex Stallings, and Robert Rocha violated his Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights under the United States Constitution. (ECF No. 1.) On May 26, 2022, the Plaintiff filed an Amended Complaint, asserting essentially the same claims contained in the Initial Complaint. (*See generally* ECF No. 11.) The Plaintiff sues the Defendants under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

On November 14, 2022, Border Patrol Agents Brian Tanke, Alex Stallings, and Robert Rocha (collectively, "the Defendants") filed the instant Motion to Dismiss pursuant to Rule 12(b)(6) for the Plaintiff's failure to state a claim upon which relief can be granted. (*See*

3

ECF No. 60.)   The Plaintiff responded to the Motion to Dismiss on November 16, 2022.   (*See* ECF No. 61.)   Thereafter, Magistrate Judge Garcia held a *Spears* hearing on December 20, 2022, to obtain a more definite statement of the Plaintiff's claim and allow the Plaintiff an opportunity to amend his complaint.   *See* ECF No. 62 at 1 (citing *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)); *see also* ECF No. 71 at 12–13 (citing *Hirsch v. Fortner*, 192 F. App'x. 279, 279 (5th Cir. 2006)).   The Plaintiff has also submitted multiple documents to the Court attempting to clarify or supplement his claims.   (*See* ECF Nos. 39, 52, 65, 69.)

On April 10, 2023, the Judge Garcia granted the Plaintiff's "Motion to Adjust and Introduce" [ECF No. 52] as a motion for leave to file an amended complaint and granted in part the Plaintiff's request to increase his damages amount as a motion to file a supplemental complaint and denied in part the Plaintiff's request for a "Motion for Exercise Rule 53.2 and Reference a New Case…" [ECF No 69.].   (*See* ECF No. 71.)   The Plaintiff seeks damages totaling $50,000,000.00 for mental anguish, refusal of medical attention, kidnapping, enslavement, and other damages incurred by him and his family members.   (*See* ECF No. 69.)

## II.     STANDARD OF REVIEW

When a party files an objection to any portion of a magistrate judge's report and recommendation, the district court must undertake a de novo review of the conclusions to which the party properly objects.   FED. R. CIV. P. 72(b)(3); 28 U.S.C. § 636(b)(1).   When conducting a de novo review, the district court independently analyzes the applicable facts and legal standards without deference to the magistrate judge's findings.   *See United States v. Raddatz*, 447 U.S. 667, 689–90 (1980) (articulating the definition of "de novo").   The district court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations.   *Garcia v. Boldin*, 691 F.2d 1172, 1179 (5th Cir. 1982).   To initiate de novo review, however, a party filing objections

must first specifically identify the findings objected to—district courts need not review objections that are frivolous, conclusive, or general in nature. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

In this case, the Plaintiff filed an amended complaint entitled, "Notice to Appeal decision from April 10, 2023", within the period allotted to file objections. (ECF No. 73.) The amended complaint is one page in length and contains two numbered paragraphs. (*Id.*) The Court construes this filing as the Plaintiff's objections to Magistrate Judge Garcia's Report and Recommendation and will review de novo the record and applicable law.

## III.    ANALYSIS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 678.) Accordingly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of . . . entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations, quotations, and alterations omitted); *accord Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 208 (5th Cir. 2009).

"Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. That is, there must be "a 'showing', rather than a blanket assertion, of entitlement to relief." *Id.* at 555 n.3 (quoting Fed. R. Civ. P. 8(a)(2)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quotations and alterations omitted).

A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (quotations omitted); *accord Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Therefore, the complaint must be liberally construed in the plaintiff's favor, all reasonable inferences must be drawn in favor of the plaintiff's claims, and the factual allegations of the complaint must be taken as true. *See Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1986). In ruling on a Rule 12(b)(6) motion to dismiss, courts generally should not go beyond the pleadings and must limit their inquiry to the facts stated in the complaint. *See* Fed. R. Civ. P. 12(d); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

The Supreme Court in *Bivens* created a cause of action against federal agents for violating a private citizen's Fourth Amendment right against an unreasonable search and seizure. 403 U.S. 388, 397 (1971). Specifically, the Supreme Court created a cause of action for an alleged violation of the Fourth Amendment by agents of the Federal Bureau of Narcotics. (*Id.* at 389.) Broadly,

*Bivens* established an avenue for private citizens to sue federal officials for the violation of certain constitutional rights and seek monetary damages. (*See id.*)

Since *Bivens*, the Supreme Court has recognized a new cause of action in only two other circumstances. First, they recognized a Fifth Amendment gender discrimination claim brought by a former congressional staffer against a United States Congressman. *See Davis v. Passman*, 442 U.S. 228, 229 (1979). Later, they recognized an Eighth Amendment claim against federal prison officials for inadequate medical care that led to a prisoner's death. *See Carlson v. Green*, 446 U.S. 14, 16–18 (1980). The Supreme Court has not created any additional implied causes of action under the Constitution and now emphasizes that recognizing a new *Bivens* claim is a "disfavored judicial activity." *Egbert v. Boule*, 142 S. Ct. 1793, 1805 (2022) (citing *Ziglar v. Abbasi*, 582 U.S. 120 (2017)).

When evaluating a *Bivens* action, courts are instructed to use a two-part test. (*Id.* at 1803.) Step one asks whether a claim presents a "new *Bivens* context?" *Id.* (quoting *Abbasi*, 582 U.S. at 147). Here, courts should consider whether the claim is "meaningfully different" than the three *Bivens* claims previously recognized. (*Id.*) Courts may consider factors such as "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statute or other legal mandate under which the officer was operating the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider." *Ziglar*, 585 U.S. at 140.

Second, if the case does create a new *Bivens* context, courts are to consider whether there are "special factors" that make the judiciary less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Egbert*, 142 S. Ct. at 1804. "[I]n all but the

most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts."
(*Id.* at 1800.) Additionally, if Congress has already authorized an alternate remedial structure, a
*Bivens* cause of action should not be created. *Id.* at 1804 (citing *Ziglar*, 582 U.S. at 137). Although
the test is often stated in two parts, the analysis can be resolved by addressing a single issue:
"whether there is any reason to think that Congress might be better equipped to create a damages
remedy." (*Id.* at 1803.)

## A. Claims Against United States Border Patrol

The complaint lists the "Del Rio Border Control Station" as one of the parties from whom
the Plaintiff seeks relief. (*See* ECF No. at 1.) The Plaintiff clarified "that he is not suing the agents
as an individual [c]apacity but is suing the United States as [o]fficials [c]apacity." (ECF No. 39
at 1.) However, *Bivens* actions do not apply to claims against federal agencies. *See FDIC v.
Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal
Government and its agencies from suit."). The Del Rio Border Patrol Station is part of U.S. Border
Patrol, a federal agency under the U.S. Customs and Border Protection (CBP), and there is no
factual allegation to suggest that U.S. Border Patrol waived its immunity in this case. Therefore,
a *Bivens* action cannot be brought against the U.S. Border Patrol. Accordingly, all pending claims
against U.S. Border Patrol are dismissed with prejudice, and the Plaintiff's Motion to Set the
Record Straight [ECF No. 39] is denied.

## B. Claims Against Border Patrol Agents

*Bivens* claims can be brought against individual federal officials for constitutional
violations. As provided above, the Plaintiff asserts that Border Patrol Agents Stallings, Tanke,
and Rocho individually and or collectively violated his Fourth, Fifth, Sixth, Eighth, Thirteenth,
and Fourteenth Amendment rights. Judge Garcia recommended that this Court deny each of the

Plaintiff's claims.  The Plaintiff filed two numbered objections to the Report and Recommendation addressed below.  The Court also addresses the claims to which the Plaintiff did not object to the Magistrate Judge's findings.

      1.  *Bivens* Claims with Objections

First, the Plaintiff responds that it is unconstitutional for Border Patrol agents to "conduct [a] Probable Cause [search] without a warrant anywhere that a person has a reasonable expectation of privacy."  ECF No. 73 at 1 (*citing Katz v. United States*, 389 U.S. 347 (1967)).  He contends that when Border Patrol agents pulled him over, they did so without probable cause and conducted a traffic stop under the premise of an immigration checkpoint search and subsequent unlawful detainment.  (*See id.*)  He alleges he never received paperwork or a traffic ticket and that he was not charged with a crime during his three-day detainment.  (*Id.*)  He contends his detainment resulted from racial profiling and discrimination "for driving while black."  (*Id.*)  The Court interprets these objections as responses to the Plaintiff's Fourth, Fifth, and Fourteenth Amendment claims.

Second, the Plaintiff alleges that he was denied the opportunity to plead his best case at the *Spears* hearing held before Judge Garcia on December 20, 2022.  (ECF No. 73.)  He alleges that his witnesses, April Joyner (his wife) and Mr. Williams, were not allowed to speak in court.  (*Id.*)  He also claims they could not enter the courtroom.  (*Id.*)  This objection involves an issue with the procedure of the *Spears* hearing and does not involve an allegation against the Defendants.  The Court will not consider this objection because it is frivolous and does not pertain to the parties in this case.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

*i.      Fourth Amendment Claim*

The Plaintiff's Fourth Amendment claim for an unreasonable search and seizure presents a new *Bivens* Context.  Although *Bivens* involved a violation of the Fourth Amendment for an unreasonable search, many factors in the Plaintiff's claim differ.  *See* 403 U.S. at 397.  To start, in *Bivens*, Federal Bureau of Narcotics agents conducted the illegal search, whereas here, Border Patrol agents conducted the search and seizure.  Second, *Bivens* involved the search of a private residence.  In contrast, the Plaintiff was detained at a Border Patrol station after a traffic stop.  Finally, there are special factors that show Congress is better equipped than the Judiciary to create a new *Bivens* cause of action.  In *Hernandez v. Meza*, the Supreme Court recognized that "regulating the conduct of agents at the border unquestionably has national security implications." *Hernandez v. Mesa*, 140 S. Ct. 735, 747 (2020).  In *Egbert*, the Supreme Court held the following: "The proper inquiry here is whether a court is competent to authorize a damages action not just against Agent Egbert, but against Border Patrol agents generally. The answer is no." 142 S. Ct. at 1798.  The risk of undermining border security is a significant reason not to extend *Bivens* to the Plaintiff's case.  To permit a suit against Border Patrol agents would implicate matters of national security and immigration — matters of great importance which Congress are in a better position to address.  This Court will follow the Supreme Court's guidance in *Egbert* and decline to extend *Bivens* to this context of the Fourth Amendment.  (*See id.* at 1809.)

*ii.      Fifth Amendment Claim*

The Fifth Amendment provides, in part, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.  The Plaintiff alleges that the Defendants violated his rights under the Fifth Amendment by detaining him for three days without being charged with a

crime. (ECF No. 1.) The Court will interpret this claim as an alleged violation of the Plaintiff's

due process rights under the Fifth Amendment. The Plaintiff also alleges that Border Patrol seized

his truck and three cell phones, which were not returned to him until approximately 100 days later.

The Court interprets this allegation as a violation of the Takings Clause of the Fifth Amendment.

Although the Supreme Court in *Davis v. Passman* recognized a *Bivens* cause of action

under the Fifth Amendment, the Plaintiff's claim presents a new context. *See* 442 U.S. 228. In

*Passman*, the Supreme Court held a damages remedy can be implied under the Due Process Clause.

(*Id.* at 235–36.) *Passman* represented a violation of the equal protection component of the Fifth

Amendment's Due Process Clause, known as "substantiative due process." (*Id.* at 234–36.) The

Plaintiff's claim in this case does not, however, represent an alleged violation of substantive due

process. Instead, his claim would more appropriately fall under procedural due process, which

requires the federal government to give persons denied of life, liberty, or a property interest proper

notice, the opportunity to be heard, and a decision by a neutral decision-maker. U.S. CONST.

amend. V. The Supreme Court has yet to recognize a *Bivens* action for a violation of procedural

due process. Further, the government official in *Passman* was a U.S. Congressman, whereas the

government officials in this case are Border Patrol agents. Therefore, the Plaintiff's due process

claim under the Fifth Amendment presents a new *Bivens* context and is not a cognizable action.

The Plaintiff's takings claim under the Fifth Amendment fails because he does not allege

that Border Patrol seized his property for "public use." *See Kelo v. City of New London,* 545 U.S.

469 (2005) (broadening the definition of "public use" to where the community would enjoy the

furthering of economic development). In fact, his pleadings state that Border Patrol seized his

truck to search for secret compartments. (*See* ECF No. 1.) Law enforcement searching through a

suspect's vehicle for possible incriminating evidence is not a "public use." Accordingly, the

factual allegations fail to show that the Plaintiff is entitled to relief for a violation of the Takings Clause under the Fifth Amendment. The Plaintiff's takings claim can be denied on this basis alone. Even if the Plaintiff's factual allegations represented a takings claim, the Supreme Court has never recognized such *Bivens* cause of action. If a takings claim as a cause of action were to be recognized, Congress would be better equipped than the Judiciary to address the appropriate remedy.

### iii.    Fourteenth Amendment Claim

The Plaintiff's Fourteenth Amendment claim essentially boils down to an allegation that he was racially discriminated against and unjustifiably detained for "driving while black." (*See* ECF No. 73.) The Supreme Court has never recognized a *Bivens* cause of action under the Fourteenth Amendment, so this presents a new context. Moreover, because the Fourteenth Amendment protects individuals from constitutional violations committed by the states, it is inapplicable in this case against federal Border Patrol agents. Accordingly, the Court adopts the findings and recommendations of the undersigned and denies the Plaintiff's Fourteenth Amendment claim.

### 2.   *Bivens* Claims Without Objections

The Plaintiff did not object to the findings and conclusions in the Report and Recommendation concerning his *Bivens* claims under the Sixth, Eighth, and Thirteenth Amendments. (*See* ECF No. 73.) In any event, Court will conduct a de novo review for each claim in turn.

### i.    Sixth Amendment Claim

The Plaintiff's Sixth Amendment presents a new *Bivens* context. The Supreme Court has never recognized a *Bivens* cause of action for a Sixth Amendment claim. Also, the Plaintiff does

not assert any facts in his pleadings or at the *Spears* Hearing that would support such a plausible claim. The Sixth Amendment right to counsel applies only to criminal defendants—plaintiffs in civil actions are not afforded the right. U.S. CONST. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335 (1963). Accordingly, the Court adopts the Judge Garcia's recommendation and denies the Plaintiff's Sixth Amendment claim.

ii.    *Eighth Amendment Claim*

The Eighth Amendment provides "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In *Carlson v. Green*, the Supreme Court recognized a Bivens cause of action under the Eighth Amendment for a prisoner who died at the hands of federal prison officials neglecting to attend to the prisoner's medical needs. *See* 446 U.S. 14, 16–18 (1980). The Plaintiff alleges that the Defendants individually and or collectively violated his Eighth Amendment right. He alleges that cruel and unusual punishment was inflicted during his detainment, that bail should have been required, and that he was forced to pay fines to retrieve his personal property. (*See* ECF No. 1.) As addressed by the undersigned, the Plaintiff's Eighth Amendment Claim could be more appropriately construed as a Fifth Amendment claim. (*See* Report and Recommendation, ECF No. 72 at 10.) The Eighth Amendment establishes protections for defendants convicted of crimes, whereas the Fifth Amendment applies to pretrial detainees and their conditions of confinement. *See* U.S. CONST. amends. V, VIII. In any event, the Court will address the Plaintiff's allegations under the Eighth Amendment.

The Plaintiff's case differs from *Carlson* in a fundamental way: he was not convicted of a crime or serving a prison sentence during his detainment. *Carlson*, 446 U.S. at 16. Instead, the Plaintiff was detained by Border Patrol for three days without being charged with a crime. After

his release, the Plaintiff was never subsequently indicted. As in *Carlson*, the Plaintiff alleges he was similarly denied medical care during his detainment. He also alleges he did not eat, that he was denied basic hygienic needs, and that he was forced to sleep on a cold cell floor. As a result of this treatment, the Plaintiff alleges he has experienced immense mental anguish and suffering. The conditions in which the Plaintiff was allegedly detained are cruel and would cause any human to suffer. That said, the Plaintiff's conditions and circumstances do not align with the factors in *Carlson*. (*See id.*) Most apparent, the Plaintiff did not die because of his detainment. Nor does he allege that he sustained any physical injury. He also does not suggest he incurred any medical costs (physical or mental) that resulted from his detainment. Finally, the government officials in *Carlson* were employees of the Federal Bureau of Prisons, and the government officials in this case are Border Patrol agents. (*See id.*) Therefore, this claim arises in a new *Bivens* context and is not a cognizable cause of action.

*iii.*     *Thirteenth Amendment Claim*

Section 1 of the Thirteenth Amendment states: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. CONST. amend. XIII, § 1. This Court will liberally construe the pleadings to mean that the Plaintiff's three-day detainment by Border Patrol represented an alleged violation of the Thirteenth Amendment.

The Plaintiff's claim fails because the Supreme Court has never recognized a *Bivens* cause of action under the Thirteenth Amendment, or any cause of action remotely similar. The Court also finds that Congress would undoubtably be better equipped to create a remedy in this context. *See* U.S. CONST. amend. XIII, § 2 ("Congress shall have power to enforce this article by appropriate legislation."); *Egbert*, 142 S. Ct. at 1804 ("Congress is better positioned to create

14

remedies in the border-security context"). On these bases, the Court adopts the undersigned's recommendation and denies the Plaintiff's Thirteenth Amendment claim.

Each of the Plaintiff's claims against the Border Patrol agents presents a new *Bivens* context not previously recognized by the Supreme Court. Based on the above findings, the Court thus concludes that the Plaintiff has failed to satisfy the two-part test required to recognize a new *Bivens* cause of action. The Plaintiff's pleadings do not contain sufficient factual matter to state a claim to relief that is plausible on its face, failing to pass Rule 12(b)(6) muster. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Court grants the Defendants' Motion to Dismiss the Plaintiff's Complaint.

Further, Congress has provided "an alternative remedial structure" for aggrieved parties in the Plaintiff's position. *Egbert*, 142 S. Ct. at 1804. An alternative remedial structure alone may suffice in limiting the judiciary in fashioning a new *Bivens* claim. *Ziglar*, 582 U.S. at 137. "And when alternative methods of relief are available, a *Bivens* remedy usually is not." (*Id.* at 145.) Any aggrieved person can file a complaint against Border Patrol, and the agency must investigate expeditiously. 8 C.F.R. §§ 287.10(a)–(b). The Plaintiff does not claim that he tried to assert his grievance through an alternative remedial structure. As in *Egbert*, he may file a complaint with Border Patrol by phone call, online form, or email.[1] The available alternative remedial structure further supports this Court's decision to dismiss the Plaintiff's *Bivens* claim under Rule 12(b)(6).

## IV.   CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that the Report and Recommendation [ECF No. 72] prepared by Retired Magistrate Judge Garcia is **APPROVED** and **ADOPTED**. Accordingly, the Plaintiff's Complaint [ECF No. 1] is **DISMISSED WITH**

---

[1] *See* https://help.cbp.gov/s/opr-complaint-page?language=en_US

**PREJUDICE**, the Plaintiff's Motion to Set the Record Straight [ECF No. 39] is **DENIED**, and the Defendants' Motion to Dismiss [ECF No. 60] is **GRANTED**.

SIGNED and ENTERED on this 2nd day of October 2023.

ALIA MOSES
Chief United States District Judge